Case No. 14-1141

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

**RICHARD CASTLE, in his
capacity as Personal
Representative for the Estate
for Jane Mary Castle,**
*Plaintiff - Appellant*

v.

**CAPITAL ONE, NATIONAL
ASSOCIATION,**
*Defendant – Appellee*

**On Appeal from the United States District Court for the District of Maryland
(Baltimore Division)**

**BRIEF OF APPELLANT RICHARD CASTLE**

Scott Borison                    Phillip Robinson
Legg Law Firm, LLC               Consumer Law Center LLC
1900 S. Norfolk Rd., Suite 350   8737 Coleville Road, Suite 307
San Manteo, CA  94493            Silver Spring, MD  20910
Phone (301) 620-1016             Phone (301) 637-6270

*Attorneys for Appellant*

June 9, 2014

UNITED  STATES  COURT  OF APPEALS  FOR  THE  FOURTH  CIRCUIT DISCLOSURE  OF CORPORATE  AFFILIATIONS  AND  OTHER  INTERESTS

Only  one  form  needs  to  be  completed  for a party  even  if the  party  is  represented   by  more  than one attorney.   Disclosures   must be  filed  on  behalf  of all parties  to a civil,  agency,  bankruptcy   or mandamus   case.  Corporate    defendants    in a criminal   or post-conviction    case and  corporate   amici curiae  are  required   to file  disclosure   statements.  Counsel  has  a continuing   duty  to update  this information.

No.   14-1141                 Caption:    Castle v. Capital One,  National Association

Pursuant  to  FRAP  26.1  and  Local  Rule 26.1,

Richard Castle, in his capacity as Personal Representative for the Estate for  Jane Mary Castle  (name of party/amicus)

who is  Appellant, makes the following disclosure:  (appellant/appellee/amicus)

1.        Is party/amicus a publicly  held corporation  or other publicly  held  entity?   DYES   [l]NO

2.      Does party/amicus  have any parent corporations?  DYES   [l]NO If yes, identify all parent corporations, including  grandparent  and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held  corporation  or other publicly  held entity?  DYES    [Z]NO If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    DYES[Z]NO If yes, identify entity and nature of interest:

5.    ls party a trade association? (amici curiae do not complete this question)    D YES[Z]NO If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this arise out of a bankruptcy proceeding?    DYES
If yes,    any trustee and the members of any

## CERTIFICATE OF SERVICE

********************
******

I certify that on    *6/9/2014*    the foregoing document was served on all parties or their counsel of record through the *CM/ECF* system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed be


/s/ Scott C. Borison                     *619/2014*
    (signature)                           (date)

11/17/2011
see

# TABLE OF CONTENTS

STATEMENT OF AUTHORITIES............................................................ iii

JURISDICTIONAL STATEMENT............................................................ 1

ISSUES PRESENTED ....................................................................... 1

STANDARD OF REVIEW ….................................................................. 1

STATEMENT OF THE CASE................................................................. 2

STATEMENT OF FACTS..................................................................... 3

    I.    General Background on Certain of the Forced Place Insurance
        Policies Subject to this Action........................................ 3

    II.    The Specific Material Facts Related to Castle…............................ 11

SUMMARY OF ARGUMENT.................................................................. 14

    I.    The Castle Deed of Trust and Maryland Law Provide that Capital
        One was Only Entitled to Force Place Insurance for the Lender's
        Interest in the Castle Property……………..…............................ 15

    II.    Castle Stated Proper Claim(s) under the Maryland Mortgage Fraud
        Prevention Act ("MMFPA")……………….................................. 20

        i.    Background on the MMFPA…………….............................. 20

        ii.    Castle's MMFPA Claim…………………............................ 26

    III.    Castle's Complaint Set Forth Sufficient Facts to Support a Claim
        Under the Maryland Consumer Protection Act…........................... 29

    IV.    Because Castle Set Forth Sufficient Facts to Support a Claim under
        the MMFPA and MCPA, Here Declaratory and Injunctive Relief
        Claims Should have Been Permitted to Proceed…........................... 33

# TABLE OF CONTENTS (cont.)

CONCLUSION…………………………………………………………...     33

STATEMENT REGARDING ORAL ARGUMENT…………………………………     35

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(E) OR 32(A)…………………     36

CERTIFICATE OF SERVICE…………………………………………………     37

REPRODUCTION OF RELEVANT STATUTES & RULES……………………………     38

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502 (D. Md. 2013)          21-22

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212 (4th Cir.2004)          8

*Blaylock v. Johns Hopkins Federal Credit Union,* 152 Md.App. 338, 831 A.2d 1120 (Md.App.,2003)          30-31

*Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788 (D. Md. 2013)          22

*Darlene Diaz v. HSBC Bank USA NA,*  Case No. 13-21104 (S.D. Fl. March 24, 2014)          5

*D.L. ex rel. K.L. v. Baltimore Bd. of Sch. Comm'rs*, 706 F.3d 256 (4th Cir. 2013)          26

*Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315 (4th Cir. 2012)          2

*Flandell v. Wells Fargo Bank, NA*, Case No. 13-60721 (S.D. Fl. March 17, 2014)          5

*Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, CIV.A. ELH-12-2376, 2013 WL 3895011 (D. Md. July 25, 2013)          8

*Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005)          31

*Hoover v. HSBC Mortgage Corp. (USA)*, 3:13-CV-149 MAD/DEP, 2014 WL 1280441 (N.D.N.Y. Mar. 27, 2014)          4-5, 15

*Marchese v. JPMorgan Chase Bank, N.A.,* 917 F. Supp. 2d 452 (D. Md. 2013)          21, 30

*MRA Prop. Mgmt., Inc. v. Armstrong*, 426 Md. 83, 43 A.3d 397 (2012)          31

# TABLE OF AUTHORITIES

**Cases** | **Page(s)**
**(continued)**

*Morris v. Osmose Wood Preserving*, 340 Md. 519, 667 A.2d 624 (1995) — 32

*Pak v. Hoang*, 378 Md. 315, 835 A.2d 1185 (2003) — 26

*Piotrowski v. Wells Fargo Bank*, N.A., CIV.A. DKC 11-3758, 2013 WL 247549 (D. Md. Jan. 22, 2013) — 22, 30

*Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999) — 25-26

*Rothstein v. GMAC Mortgage, LLC*, 12 CIV. 3412 AJN, 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013) — 4, 15

*Saccoccio v. J.P. Mortgage Chase Bank, NA*, Case 13-21107 (S.D. Fl. Feb. 14, 2014) — 5

*Simpkins v. Wells Fargo Bank N.A.*, 2013 WL 4510166 (S.D.Ill., August 26, 2013) — 3-4, 6, 13

*State v. Cottman Transmissions Systems, Inc.*, 86 Md.App. 714, 587 A.2d 1190 (Md.App.,1991) — 29

*Stone v. Instrumentation Lab. Co.*, 591 F.3d 239 (4th Cir. 2009) — 19-20

*Stovall v. SunTrust Mortg., Inc.*, CIV.A. RDB-10-2836, 2011 WL 4402680, (D. Md. Sept. 20, 2011) — 20-21

*Xi Chen Lauren v. PNC Bank, N.A.*, 2:13-CV-762, 2013 WL 5565511 (W.D. Pa. Oct. 8, 2013) — 5, 15

**Statutes**

28 U.S. C. § 1291 — 1

28 U.S. C. § 1311 — 1

iv

# TABLE OF AUTHORITIES

| **Statutes** **(cont.)** | **Page(s)** |
| --- | --- |
| 28 U.S. C. § 1312 | 1 |
| 28 U.S. C. § 1313 | 1 |
| 28 U.S. C. § 1314 | 1 |
| 28 U.S. C. § 1315 | 1 |
| 28 U.S. C. § 1332 | 1 |
| 28 U.S. C. § 1333 | 1 |
| 28 U.S. C. § 1453 | 1 |
| 28 U.S. C. § 1711 | 1 |
| MD. CODE ANN., COM. LAW § 13-101, *et. seq.* | *Passim* |
| MD. CODE ANN., COM. LAW § 13-102 | 29 |
| MD. CODE ANN., COMM. LAW § 13-301 | 30 |
| MD. CODE ANN., COMM. LAW § 13-302 | 32 |
| MD. CODE ANN., INS. § 12-301 | 17, 20 |
| MD. ANN. CODE, REAL PROP., § 7-401, *et seq.* | *Passim* |
| MD. ANN. CODE, REAL PROP., § 7-401 | 28-29 |
| MD. ANN. CODE, REAL PROP., § 7-406 | 22 |

**Rules**

| | |
| --- | --- |
| Fed. R. App. P. 4 | 1 |
| Fed. R. Civ. P. 12 | 1 |

| **Other** | **Page(s)** |
| --- | --- |

# TABLE OF AUTHORITIES

**Authorities**

29 Am. Jur. 2d Evidence § 290   28

44 Am. Jur. 2d Insurance § 945   18-19

John M. Flynt, <u>A Solution to Force-Placed Insurance Litigation for Lenders: Disclosure and Arbitration</u>, 26 Cumb. L. Rev. 537, 539-40 (1996)   19

Maryland Homeownership Preservation Task Force Report (November 29, 2007)   22-24

REAL PROPERTY—MARYLAND MORTGAGE FRAUD PROTECTION ACT, 2008 Maryland Laws Ch. 3 (S.B. 217)   22

*The 90 Day Report, A Review of the 2008 Legislative Session, Md. Dept. of Legislative Services (April 11, 2008)*   25

## JURISDICTIONAL STATEMENT

This case began as a putative class action in the U.S. District Court for the District of Maryland, Baltimore Division filed by Richard Castle[1] the Appellant. Subject matter jurisdiction in the District Court was authorized by 28 U.S.C. § 1332 and 28 U.S.C. §§ 1333(d), 1453, and 1711-1715. A memorandum decision and final judgment were entered on January 15, 2014.  Appellants filed notice of appeal to the United States Court of Appeals for the Fourth Circuit Court on February 13, 2014.  *See* Joint Appendix ("JA") at 254; Fed. R. App. P. 4(a)(1)(A). Appellate jurisdiction is authorized by 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the Plaintiff's complaint stated claims on undisclosed relationships and kickback relationships entered into by the Defendant in connection with the servicing of the Plaintiff's mortgage loan?  [Yes.]

2. Whether the Plaintiff's complaint stated claims based upon the Defendant's force placing excessive insurance since the policy amount exceeded Defendant's insurable interest in the property under Maryland law?  [Yes.]

3. Whether the District Court erred in granting the motion to dismiss?  [Yes.]

## STANDARD OF REVIEW

The standard of review on appeal from a decision of a lower court granting a Rule 12(b)(6) motion to dismiss, as occurred in this case in the District Court, has

been stated by this Court as follows:

> We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir.2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012).

## STATEMENT OF THE CASE

This is a putative consumer class action against Appellee related to its practices relating to the forced place insurance coverage for mortgage loans. Capital One obtained the force placed insurance through an undisclosed relationship with an insurer, Assurant and related entities. Capital One had entered into various contractual arrangements with Assurant that provided Capital one with benefits from placing the insurance with it. None of these relationships were disclosed to Castle.

As a result of the undisclosed relationship between Capital One and Assurant, Capital One not only obtained force place insurance when it was unnecessary but also obtained coverage in amounts well in excess of its insurable interest. As a result of the fees charged for various unnecessary and

---

[1] Mr. Castle was substituted as the Plaintiff below in his capacity as the personal representative of the Estate of Jane M. Castle (the original plaintiff) who passed

excess insurance policies obtained by Capital One, Capital One began foreclosure proceedings against Castle's home.

Castle asserted claims under Maryland laws against Capital One including the Maryland Consumer Protection Act, the Maryland Mortgage Fraud Protection Act, and the Maryland Consumer Debt Collection Act.

The original complaint was filed on June 22, 2013. JA E. 5 (ECF. 1). The Appellees moved to dismiss the original complaint. JA at E. 47 (ECF. 5 & 11). Castle opposed the motion to dismiss. JA at E. 93 (ECF. 8). The District Court granted the motion to amend on January 15, 2014 holding that Castle had failed to state a claim under Maryland law. JA at E. 353 (ECF. 16 & 17).

Castle timely appealed the District Court's decision. JA E. 354 (ECF. 18).

## STATEMENT OF FACTS

### I.    *General Factual Background on Certain of the Forced Placed Insurance Practices Subject to this Action*

This action involves simply one of many similar actions around the country relating to the previously unknown and undisclosed practices of mortgage servicers who pad their profits by forcing the sale of consumer homeowner insurance that is excessive or unnecessary. Capital One obviously believes that it is perfectly acceptable conduct. Castle disagrees. Castle is not alone in disagreeing with Capital One's position. Recently in a similar case, *Simpkins v. Wells Fargo*

---

away after the commencement of the action.

*Bank N.A.*, 2013 WL 4510166 (S.D.Ill., August 26, 2013), the defendants were in the same position as the Capital One in this action. The plaintiffs in *Simpkins* alleged:

> that Wells Fargo force-placed insurance policies with a provider that charged a significantly higher premium for considerably less coverage than she had herself, in order to "kick-back" some of the money to Wells Fargo. None of these facts were disclosed to her. Simpkins further claims that the force-placed insurance policies were back dated to cover time periods that were already passed and for which the lender had no risk of loss. Simpkins also alleges that she and other homeowners relied on Wells Fargo to act reasonably to protect the homeowner's property and not to charge far more than a reasonable rate for coverage that protected only the lender's interest in the property and not the borrower's interest. She contends that these deceptive acts were designed to mislead her and other homeowners about the reason for forceplacing insurance with only a few particular companies.

2013 WL 4510166, *9.

In *Simpkins*, Wells Fargo and the other defendants argued that the consumer homeowner's claims should be dismissed for similar reasons that Capital One advanced below and were followed by the District Court. The *Simpkins* Court rejected the defendants' argument finding that the plaintiffs had stated claims for breach of fiduciary duty, unjust enrichment and violations of the Illinois unfair and deceptive trade practices law. *Id.*[2]

---

[2] *See e.g. Rothstein v. GMAC Mortgage, LLC*, 12 CIV. 3412 AJN, 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013) <u>leave to appeal granted,</u> 12 CIV. 3412 AJN, 2014 WL 1329132 (S.D.N.Y. Apr. 3, 2014)(denying motion to dismiss RICO conspiracy claims against forced placed insurers involved with GMAC Mortgage LLC); *Hoover v. HSBC Mortgage Corp. (USA)*, 3:13-CV-149 MAD/DEP, 2014 WL 1280441

4

Further, multiple federal courts have granted preliminary and final approval to class wide settlement to the same core claims presented in this action from other jurisdictions around the country. *Saccoccio v. J.P. Mortgage Chase Bank, NA*, Case 13-21107 (S.D. Fl. Feb. 14, 2014)(granting final approval to nationwide, $300 million class-action settlement involving J.P. Morgan Chase and the same alleged, non-party co-conspirators in this action); *Darlene Diaz v. HSBC Bank USA NA*, Case No. 13-21104 (S.D. Fl. March 24, 2014)(granting final approval to nationwide, multi-million class-action settlement involving HSBC and the same alleged, non-party co-conspirators in this action); *Flandell v. Wells Fargo Bank, NA*, Case No. 13-60721 (S.D. Fl. March 17, 2014) (granting preliminary approval to nationwide multi-million class-action settlement involving Wells Fargo Bank, NA and the same alleged, non-party co-conspirators in this action);  However, none of these other matters have considered the effect of Maryland law and whether it is appropriate to permit excessive forced place insurance above the insurable interest of the lender when the legislature has specifically said it is not.

---

(N.D.N.Y. Mar. 27, 2014)(denying HSBC's motion to dismiss mortgage insurance kickback claims with the same alleged, non-party co-conspirators in this action); *Xi Chen Lauren v. PNC Bank, N.A.*, 2:13-CV-762, 2013 WL 5565511 (W.D. Pa. Oct. 8, 2013) reconsideration denied, CIV.A. 13-762, 2013 WL 6123084 (W.D. Pa. Nov. 21, 2013)(same)

In addition to the decision in *Simpkins* and related cases, significant regulatory actions have been taken against Capitol One's partners in this scheme (who are identified in the Complaint but are not parties to this action), including those brought by the New York Department of Financial Services ("DFS") and the National Association of Insurance Commissioners ('NAIC"). Complaint (ECF. 1)( JA at E. 13-15) ("Com.") at ¶¶ 26-31.

DFS' investigation of the largest force-placed insurer in the county, Assurant, Inc., which is also the co-conspirator of the Defendant in this action,[3] resulted in the following findings about Assurant and is subsidiaries' relationship with mortgage lenders like the Defendant:

> The DFS investigation revealed that the premiums charged to homeowners for force-placed insurance can be two to ten times higher than premiums for voluntary insurance -- despite the fact that force-placed insurance provides far less protection for homeowners than voluntary insurance.

---

[3] Com. at ¶¶ 34 ("Assurant's actions, directly and indirectly through its affiliates including ASIC, include: (a) conspiring and aiding and abetting Capital One's breach of the duty of care to the residential borrowers for whom it serviced residential mortgage loans…") and 125 ("Capitol One conspired pursuant to its undisclosed arrangement with Assurant and ASIC to the detriment of the Named Plaintiff and Class Members as a way to maximize its profits without providing any, additional beneficial services for the unnecessary or duplicative force-placed insurance it charged for and/or collected on from Named Plaintiff and the Class Members")( JA at 17, 38).

Indeed, even though banks and servicers are the ones who choose which force-placed insurance policy to purchase, the high premiums are ultimately charged to homeowners, and, in the event of foreclosure, the costs are passed onto investors. And when the mortgage is owned or backed by a government-sponsored enterprise, such as Fannie Mae or Freddie Mac, those costs are ultimately borne by taxpayers.

DFS's investigation found that Assurant competed for business from the banks and mortgage servicers through what is known as "reverse competition." That is, rather than competing by offering lower prices, the insurers competed by offering what is effectively a share in the profits. This profit sharing pushed up the price of force-placed insurance by creating incentives for banks and mortgage servicers to buy force-placed insurance with high premiums. That's because the higher the premiums, the more that the insurers paid to the banks. This was done by…

- Paying commissions to insurance agents and brokers affiliated with the banks even though the agents and brokers did not perform the customary tasks that would justify a commission.

- Paying banks' "expenses" related to force-placed insurance. These expenses were typically a percentage of premium and were paid to banks that did not have agents or brokers that would collect a premium…

One measure of how profitable force-placed insurance has been for Assurant is how little it has paid in claims—what is known as the loss ratio. In its 1994 rate filing with DFS, one of Assurant's subsidiaries based its rate on the expectation that it would pay 58 percent of premium on claims. In fact, from 2006 through 2011, that subsidiary actually paid only 24.7 percent, 19.4 percent, 17.3 percent, 22.8 percent, 24.3 percent, and 24.7 percent, respectively. Despite years when it paid out claims less than half of what it projected, Assurant did not file for lower rates. For voluntary homeowners insurance the loss ratio has historically been around 63 percent nationally.

7

See New York Department of Financial Services Press Release dated March 21, 2013, "Cuomo Administration Settles with Country's Largest Force-Placed Insurer, Leading Nationwide Reform Effort and Saving Homeowners, Taxpayers, And Investors Millions of Dollars."[4]

As a result of the DFS investigation and settlement of the agency's claims against Assurant, DFS, Assurant, and Assurant's subsidiaries, including America Security Insurance Company ("ASIC"), entered into a Consent Order. Com. at ¶¶ 14, 32, 49, 53, 70. The Consent Order requires ASIC and Assurant

> to make changes in their force-placed insurance practices and to reduce the rates charged to borrowers whose insurance was force-placed. Certain borrowers whose insurance was force- placed will be entitled to restitution of a portion of the force-placed premium which they paid. Assurant, Inc. and its subsidiaries also agreed to pay the sum of fourteen million dollars ($14,000,000) to the NYDFS.

---

[4] Since the Plaintiff referenced and cited the press release in her Complaint at ¶¶ 28-29, 42 (ECF. 8-2 (JA at E. 129-131), she attached it to her opposition to the Defendant's Motion to Dismiss without converting this motion to one for summary judgment. *Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, CIV.A. ELH-12-2376, 2013 WL 3895011, *6 (D. Md. July 25, 2013)("a court may 'consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.' *Philips v. Pitt Cnty. Mem. Hosp.,* 572 F.3d 176, 180 (4th Cir.2009) (internal citation omitted) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 606, 618 (4th Cir.1999)); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir.2004).

Com. at 32.[5]

Finally, the practices subject to this action have been subject to significant regulatory fallout,[6] public testimony,[7] research,[8] and examination by the media.[9] respectfully differs from Capital One's belief that it simply may enter into whatever arrangements it wishes related to forced-place insurance without disclosing the various relationships and financial incentives it gains under the table to the detriment

---

[5] A complete copy of the Consent Order available from the DFS website at http://www.dfs.ny.gov/about/press2013/assur-order-130321.pdf and was presented to the court below (ECF. 8-3)( JA at E. 132-162)(*see also* FN 4).

[6] The Federal Housing Finance Agency ("FHFA"), which oversees Freddie Mac and Fannie Mae (who own approximately 50 % of the secondary mortgage market including the Plaintiff's loan [Com. at ¶ 82)]) issued new prohibitions to some of the same practices addressed in the Plaintiff's complaint and various regulators. ECF. 8-4. JA at E. 163-165. (*see* FN 4).

[7] Com. at ¶¶ 19, 22, 45, 54, 61 citing and quoting testimony of Birny Birnbaum, Executive Director of the Center for Economic Justice before the U.S. House of Representatives Subcommittee on Insurance, Housing and Community Opportunity Committee on Financial Services (July 28, 2011) (ECF. 8-5 (JA at E. 166-175)) and Florida Office of Insurance Regulation (July 3, 2012) (ECF. 8-6 (JA at E. 176-275)) (*see also* FN 4); Com. at ¶¶ 20, 21, 57 citing and quoting testimony of J. Robert Hunter, Director of Insurance for the Consumer Federation of America (May 17, 2012) before DFS. ECF. 8-7. JA at E. 276-293 (*see also* FN 4).

[8] Com. at ¶¶ 30-31 discussing the NAIC's "concern…over whether the growing use of lender-placed insurance is 'reverse competition,' where the lender chooses the coverage provider and amount, yet the consumer is obligated to pay the cost of coverage") and outlying research and testimony on the issues in this action). ECF. 8-8. JA at E. 294-296 (*see also* FN 4).

of the borrower by proceeding to purchase excessive or unnecessary insurance with the homeowner footing the bill.

The conduct of Capital One alleged in Castle's complaint is not simply a business relationship that competes with other products services in the marketplace of homeowner's insurance where no marginal difference or cost exists. The conduct herein involves business relationships designed to charge and collect fees and sums that do not *rationally* or *materially* relate to the actual risk and/or service provided and exceed the market place norm in order to fuel the kickback relationship. JA at 26 (Com. ¶ 69) (the "Defendant's undisclosed kickback arrangements with force-placed insurance providers tend to keep the amounts charged to borrowers for force-placed insurance artificially inflated over time because a percentage of borrowers' premiums are not actually being paid to cover actual risk, but are simply funding illegal kickbacks to lenders. Amounts paid to servicers as sham reinsurance premiums and commissions have become a part of the cost of doing business for force-placed insurance providers. As a result, force-placed insurance premiums incorporate the payment of such kickbacks—to the detriment of consumers").

For this reason Castle should have been permitted, accepting as true her well-pled and detailed claims based on the admissions of Capital One's partners and

---

[9] JA 12-13, 20, 26 (Com. at ¶¶ 24, 46, 68) discussing American Banker analysis and reporting on problematic forced-placed insurance arrangements involving

conclusions of government agencies and experts in the field, to proceed with this action. To say otherwise would simply endorse Capital One's underlying premise that it may acquire whatever insurance it desires even if that insurance is ten times the cost of comparable insurance, provides the homeowner no meaningful benefit and is in excess of any insurable interest of Capital One.

### II.    *The Specific, Material Facts Related to Castle*

On or about September 22, 2009 Mrs. Castle and her then husband took out a mortgage loan with Chevy Chase Bank, NA ("Chevy Chase") that was secured by their home and property located at 12150 Hopewell Road in Hagerstown, Maryland 21740 ("Castle Property"). JA 8, 29 (Com. at ¶¶ 12, 79). At the time of the origination of the Castle loan, Capital One had acquired Chevy Chase but was continuing to use the name Chevy Chase to conduct certain business. JA 29 (Com. at ¶ 80). The monthly payment at the origination of the loan equaled $396.91 and was to remain the same throughout the term of the loan and Castle agreed to pay for taxes and insurance separately as was her right under Maryland law. *Id.*

As part of the loan, Castle and her husband entered into a Deed of Trust (JA 73-92; ECF. 5-2) in which Castle and Capital One d/b/a Chevy Chase, on its behalf and on behalf of its successors, agreed (i) Castle would maintain sufficient property insurance on the Castle Property to protect the interests of Chevy Chase; (ii) Chevy

---

undisclosed kickbacks. ECF. 1. JA at 12-13, 20, 26 (*see also* FN 4).

Chase would act reasonably concerning Castle's choice of insurance; and (iii) if Castle failed to maintain insurance that Chevy Chase would acquire insurance to cover its interests in the Castle Property. JA 79 (ECF 5-2 at ¶ 5). The Deed of Trust also stated that its provisions were subject to Maryland law. JA 84 (ECF 5-2 at ¶ 16). Capital One and/or Capital One sold its interests in the Castle loan to Fannie Mae but maintained the profitable servicing rights on the loan—i.e. the right to collect and assess payments and fees on the Castle loan with absolutely little or no risk. JA 29; Com. at ¶ 82.

Castle maintained her homeowner's insurance to cover the value of the Castle Property except for one brief period—i.e. 52 days—between February 6, 2012 and March 29, 2012. JA 30; Com. at ¶ 87. The annual cost for the policy obtained by Castle beginning March 30, 2012 was $405.68. JA E. 30-31; Com. at ¶¶ 88, 90. The cost of the excess coverage policy force placed by Capital One was $2,478. JA 31; Com. at ¶ 94. The policy obtained by Defendant was also backdated to cover a period when there were no losses (JA 29-30; Com. at ¶ 83 (i)) and was knowingly continued by the Defendant for longer periods even after Castle had obtained new coverage at her expense and notified Capital One but it chose to ignore that notice and "demanded that Castle retain the ASIC Forced Place Insurance." JA 30 (Com. at ¶ 83 (iii)). The policy was written for an amount far in excess of the loan balance – the limit of the Appellee's insurable interest. JA 30 (Com. at ¶ 83 (ii)). And,

12

Capital One's force placed insurance overlapped coverage that Appellant had obtained and notified the Capital One but Capital One knowingly and profitably ignored that notice. JA 30 (Com. at ¶ 83 (iii)).

Capital One utilized its undisclosed relationship with ASIC (described generally at JA E. 5-7, 11-29; Com. at ¶¶ 1-8, 19-78) to force place insurance on the Castle property and refused to terminate that insurance when Castle notified it that she had obtained new coverage.    JA 30 (Com. at ¶ 83).   Capital One charged Castle's mortgage account for sums related to the excessive forced place insurance that accrued after she had obtained new, cheaper insurance.  JA 31 (Com. at ¶¶ 92, 96).   At all times relevant herein, Capital One's insurable interest in the Castle Property was below $75,000.  JA 30 (Com. at ¶ 83(ii)).  However, Capital One and ASIC forced placed insurance upon Castle which exceeded the loan balance owed by Castle to Capital One/Fannie Mae by more than threefold.  JA 31 (Com. at ¶ 93). Capital One received a percentage of the premium charged to Castle's mortgage account back from ASIC as a kickback/referral commission.  JA 5, 7, 11-12, 16, 17, 19-21, 25 (Com. at ¶¶ 2-3, 19, 21, 33, 34, 45, 55-59, 65).

Capital One refused to credit Castle's mortgage account related to the Castle Loan for the sums it has charged and attempted to collect and/or actually collected from Castle related to the ASIC forced placed insurance despite Castle's notice to it

13

that alternative coverage was obtained.   JA 29, 31 (Com. at ¶¶ 83, 96).   These

collection attempts, assessments, and fees are damages and losses to Castle.   *Id.*

## SUMMARY OF ARGUMENT

Capital One, like many other lenders, entered into a business relationship with

a group of affiliated forced placed insurers[10] that provided kickbacks to Capital

One when it bought unnecessary and expensive insurance coverage for consumer

borrowers like Castle.  Capital One had a duty under Maryland law to disclose its

arrangement but failed to due so.   As such, the arrangement led to the purchase of

insurance premiums for coverage (i) for back-dated periods of time when there

was no losses; (ii) for periods of time when Castle had obtained new coverage and

the  forced-place  insurance  by  Capital  One  was  excessive,  duplicative,  and

unnecessary (except to continue to generate profits and kickbacks to Capital One),

and (iii) that exceeded Capital One's insurable interest in the Castle Property since

Capital One had a stake in the sums collected by its partners which was kicked-

back to it as part of the arrangement.

Respectfully, the District Court improperly made certain factual findings in

consideration of the Motion to Dismiss and which was not appropriate for this stage

of  the  proceedings  (even  if  true).   Further,  portions  of  the  claims  presented  by

---

[10] Including Assurant, Inc. ("Assurant"), Assurant Speciality Property, and American
Security Insurance Company ("ASIC").   *See* JA 6-7 (Com. at ¶¶ 1-3, 5-8 and Com.
*generally*).

Castle simply were not even addressed by the District Court. For these reasons the District Court committed error and the decision dismissing the case should be reversed.

As demonstrated by the well-pled complaint and Maryland law, Castle identified statutory claims that provided Capital One sufficient notice of the claims and facts against it for the litigation to proceed. *Compare Simpkins v. Wells Fargo Bank N.A.*, 2013 WL 4510166; *Rothstein v. GMAC Mortgage, LLC*, 12 CIV. 3412 AJN, 2013 WL 5437648; *Hoover v. HSBC Mortgage Corp. (USA)*, 3:13-CV-149 MAD/DEP, 2014 WL 1280441; *Xi Chen Lauren v. PNC Bank, N.A.*, 2:13-CV-762, 2013 WL 5565511.

## **ARGUMENT**

### I. **The Castle Deed of Trust and Maryland Law Provide that Capital One was Only Entitled to Force Place Insurance for the Lender's Interest in the Castle Property.**

Below, the Defendant offered little in regard to the facts relating to the Castle's claim that Capital One was buying excessive insurance.[11] The Defendant claims that Plaintiff was told via the Deed of Trust that if "she failed to maintain insurance, [Defendant] would purchase whatever amount of lender-placed insurance it deemed appropriate, and that such insurance might exceed the loan balance…" See JA 67 (Defendant's Memorandum at P. 18)(ECF. 5-1). In support

of its statement the Defendant identified two sentences of ¶ 5 of the Deed of Trust

(JA 79) (ECF. 5-2):

> Lender is under no obligation to purchase any particular type or amount of coverage.

> and

> Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

*Id.*

The forced placed insurance is intended, however, to only cover the lender's interest in the property.  Paragraph 5 of the Deed of Trust specifically conditions and limits the forced place insurance coverage to the interests of Capital One.  Deed of Trust (ECF. 5-2) at ¶ 5 ("**Such coverage shall cover Lender**, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability…)(emphasis added).

Capital One argued below that the two provisions it highlighted to the District Court (i) trump the provision limiting the necessary coverage and (ii) allow it to purchase insurance in whatever amount it wants and assess the borrower for the excess insurance cost even when the lender has no insurable interest in the Plaintiff's property above the amount it is owed on the loan.

---

[11] Castle's well pled claims in this regard are found at multiple parts of the Com. including ¶¶ 35, 83, 86, 93 of the Com. (JA at 17, 30-30).

In Maryland however, a person is limited to obtaining insurance to the extent of its insurable interest.  Md. Code Ann., Ins. § 12-301(b)("A contract of property insurance or a contract of insurance of an interest in or arising from property is enforceable only for the benefit of a person with an insurable interest in the property at the time of the loss").  *See also* MD Code, Insurance § 12-301(a).[12,13]  The Deed of Trust recognizes that Maryland law controls the relationship between the parties (JA 84 (ECF 5-1 at ¶ 16)).  Under Maryland law, Md. Code Ann., Ins. § 12-301(b), there simply was no legal basis for Capital One to force place insurance on the Castle

---

[12]  "An insurable interest in property is measured by the extent of possible harm to the insured from loss, injury, or impairment of the property."  MD Code, Insurance § 12-301 (c).

[13] Accepting the well pled allegations of the Complaint, Capital One also has a duty of reasonable conduct with Castle.  *See* JA 18-19 (Com. at ¶ 41) ("The discretion afforded Capital One, however, to force-place insurance is limited by the bounds of reasonable conduct, duties owed to borrowers (to which each relies is conducted in good faith and safely and soundly) and by the express terms of the mortgage itself. Capital One routinely breaches its duty to borrowers, exceeds the bounds of reasonableness and the spirit, intent and letter of the mortgage contract by force-placing insurance and charging for it in a manner and in amounts that are not required to protect the lender's interest in the property in an effort to reap profits from the borrower which are not required nor contemplated by the mortgage contract and through other conduct described herein with respect to the forced placement of insurance. The typical mortgage contract does not disclose that the lender or other servicer will receive a financial benefit in connection with the force-placed insurance policy. Instead, the contract limits the authority of the mortgage servicer to force-place insurance sufficient to protect the lender's interest in the secured property").

Property for more than three-fold its actual insurable interest in the property.  JA 31 (Com. at ¶ 93).

In further support of Maryland law on this point, other jurisdictions as summarized at 44 Am. Jur. 2d Insurance § 945 comes to the same conclusion—i.e. there is no basis for Capital One to acquire forced-placed insurance in excess of its insurable interest in the Castle Property.

**A mortgagee of real or personal property has an insurable interest to the <u>extent</u> of the mortgage debt**, even after the mortgagee has assigned the mortgage, if the mortgagee has guaranteed its payment or is liable upon the endorsement of the notes secured by the mortgage. It is the existence of the mortgage debt, not the lien, that determines whether a designated mortgagee retains an insurable interest under a fire insurance policy covering mortgaged premises.

**The mortgagee's insurable interest is initially presumed to be the value mortgaged** and cannot exceed the value of the property subject to the mortgage. **In other words, a mortgagee's insurable interest under an insurance policy covering mortgaged property is limited to the amount of the debt.** The insurable interest may be limited to the value of the mortgaged property at the time of loss and not its replacement cost. A named mortgagee can never possess an insurable interest greater than that of the named insured.

If a fire insurance contract between an insurer and a property owner includes a standard mortgage clause naming as mortgagee the lender under the deed of trust executed by the property owner to secure the debt owing on the property, **the lender under the deed of trust pursuant to that clause has an independent and distinct contract with the insurer as if the lender under the deed of trust had taken out a separate policy with the insurer and is deemed to be insured to the extent of the balance due it from the property owner**…

44 Am. Jur. 2d Insurance § 945, "Extent of mortgagee's insurable interest" (citing cases from federal and state courts)(emphasis added)(footnotes omitted).

> One commenter has explained concerning forced-place insurance:
>
> **Force-placement is the act of the lender purchasing an insurance policy to protect its interest in the collateral**. Lenders commonly refer to this coverage as vendor single interest insurance ("VSI") or collateral protection insurance ("CPI"). After force-placement of the policy, the lender pays the premiums and adds the amount to the principal of the borrower's loan. The force-placed policy insures the lender for the amount of the outstanding loan balance in the event that the borrower injures the collateral. The force-placed policy, however, does not protect the borrower's interest or equity in the collateral.

John M. Flynt, <u>A Solution to Force-Placed Insurance Litigation for Lenders: Disclosure and Arbitration</u>, 26 Cumb. L. Rev. 537, 539-40 (1996)(emphasis added)(footnotes omitted).

Capital One's insurable interest in the property was capped at the loan amount. It had no insurable interest in excess of the balance of the loan. To contend that it may lawfully buy insurance, which it will expect the borrower to pay for, that exceed the loan balance (i.e. the lender's insurable interest) is a position without merit under Maryland law. Castle raised this argument to the District Court (JA at 96, 106-109) but the issue was not addressed by it. JA 333-253. This Court has previously explained that statutes mean what they say:

> "When interpreting statutes we start with the plain language." *U.S. Dep't of Labor v. N.C. Growers Ass'n,* 377 F.3d 345, 350 (4th Cir.2004). Under the first and "cardinal canon" of statutory

19

construction, "courts must presume that a legislature says in a statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Accordingly, when a statute is unambiguous, "this first canon is also the last: 'judicial inquiry is complete.' " *Id.* at 254, 112 S.Ct. 1146.

*Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 243 (4th Cir. 2009) (internal quotations omitted).

Without having to even consider whether or not it was even proper for Capital One to force place insurance when the property was uninsured, Castle has stated plausible and viable claims against Capital One for its excessive insurance model above the limits allowed under Maryland law. To say otherwise judicially eviscerates the parties' agreement in the Deed of Trust and legislature's statute on point—i.e. Md. Code Ann., Ins. § 12-301(b).

## II. Castle Stated Proper Claim(s) Under the Maryland Mortgage Fraud Prevention Act ("MMFPA")

### i.    *Background on the MMFPA*

The MMFPA

[i]n its broadest sense, the statute simply states "[a] person may not commit mortgage fraud." *Id.* § 7–402. Relevant to the present action, the statute defines mortgage fraud as:

(1)    Knowingly    making    any    deliberate    **misstatement, misrepresentation, or omission** during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

20

(2) Knowingly creating or producing a document for use during the mortgage lending process that contains a **deliberate misstatement, misrepresentation, or omission** with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(3) Knowingly using or facilitating the use of any **deliberate misstatement, misrepresentation, or omission** during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

...; or

(6) Filing or causing to be filed in the land records in the county where a residential real property is located, any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

Md.Code Ann., Real Prop. § 7–401(d)(1)-(6). The statutory definition of the "mortgage lending process" includes "(i) [t]he solicitation, application, origination, **negotiation, servicing,** underwriting, signing, closing, and funding of a mortgage loan; and (ii) the notarizing of any document in connection with a mortgage loan." *Id.* § 7–401(e)(2).

*Stovall v. SunTrust Mortg., Inc.*, CIV.A. RDB-10-2836, 2011 WL 4402680. *9-10 (D. Md. Sept. 20, 2011)(emphasis added). *See also Marchese v. JPMorgan Chase Bank, N.A.,* 917 F. Supp. 2d 452, 468-469 (D. Md. 2013)("The grounds for denying the Motion to Dismiss with respect to [mortgage servicing practices] under the MMFPA involve the same analysis the Court conducted under the MCPA"); *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531-32 (D. Md. 2013)("The plain text of the MMFPA creates a statutory duty to disclose and a related action for fraud. As noted, mortgage fraud under R.P. § 7–

21

401(d) includes the making, knowingly and with the 'intent to defraud,' of an

'omission during the mortgage lending process with the intent that the misstatement,

misrepresentation, or omission be relied on by a mortgage lender, borrower, or any

other party to the mortgage lending process'"); *Currie v. Wells Fargo Bank, N.A.*,

950 F. Supp. 2d 788, 799-800 (D. Md. 2013); *Piotrowski v. Wells Fargo Bank*, N.A.,

CIV.A. DKC 11-3758, 2013 WL 247549, *13 (D. Md. Jan. 22, 2013).

The MMFPA was originally passed by the Maryland Generally Assembly as

emergency, remedial legislation in response to the mortgage crisis that taken over

Maryland (and the rest of the country) in 2008. REAL PROPERTY—MARYLAND

MORTGAGE FRAUD PROTECTION ACT, 2008 Maryland Laws Ch. 3 (S.B. 217).

To aid criminal enforcement of the prohibition against mortgage fraud enacted as

part of the MMFPA, the legislature provided a private right of action:

> (a) In addition to any action authorized under this subtitle [including criminal enforcement pursuant to § 7-405] and any other action otherwise authorized by law, a person may bring an action for damages incurred as the result of a violation of this subtitle.
>
> (b) A person who brings an action under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.
>
> (c) If the court finds that the defendant violated this subtitle, the court may award damages equal to three times the amount of actual damages.

MD. ANN. CODE, REAL PROP., § 7-406.

The MMFPA came about as part of a package of legislation in the 2008

session which arose from recommendations of the Maryland Homeownership

Preservation Task Force, formed at the height of our current financial crisis, to come up with common sense solutions to minimize the devastating effects of foreclosure for a variety on constituencies. The Task Force issued a report ("Task Force Report") which aptly summarized the effect of foreclosures on the community as follows:

> Foreclosures have a devastating effect on homeowners and the communities in which they live. Frequently, a homeowner who loses his or her home to foreclosure loses the accrued equity. A property sold in a foreclosure sale typically draws a lower price than it would in a regular market sale. In the first half of 2005, Maryland's "foreclosure discount" was 18.8 percent, according the St. Ambrose Housing Aid Center, Inc. This is a tragedy for a growing number of Maryland families.
>
> Extensive damage is felt in neighborhoods and communities across Maryland. Research shows that with every foreclosure on a single family home, the value of homes within an eighth of a mile declines by about nine-tenths of a percent. Property tax revenues decline proportionally, causing a negative impact on state and local governments. A study of foreclosures in Chicago in 2005 estimated that a single foreclosure costs city government up to $5,000 or more.
>
> Foreclosures also bring with them the potential for more violent crime. Research indicates that for every single percentage point increase in the foreclosure rate in a neighborhood, violent crime in that neighborhood increases by about two percent. Foreclosures can lead to vacant or neglected properties, which create an eyesore and become targets for vandalism. This can tip a community from one dominated by homeowners to one dominated by investors.
>
> Of course, the lending industry and investors also take a hit from rising foreclosure rates. Some major lenders have closed their doors, declared bankruptcy or shuttered their subprime lending arms as a result of the waning demand for risky mortgage products in investor markets. Lenders typically lose $50,000 or more on a single foreclosure,

according to information from St. Ambrose Housing Aid Center, Inc. The banking industry cites a figure well over $60,000.

Maryland Homeownership Preservation Task Force Report (November 29, 2007),

(available online at

http://www.gov.state.md.us/documents/HomePreservationReport.pdf) (last visited

June 5, 2014) at Page 12 (footnotes omitted).

To reasonably address and avoid some of the negative consequences of foreclosure, the Task Force Report made nine general recommendations that are relevant to the issues before the Court. *See Id.* at Pages 40-43. Specifically, the Task Force Report addressed the need to prevent mortgage fraud and made the following recommendation to "[e]nact a criminal mortgage fraud statute that would apply to all possible players involved in mortgage transactions and…[i]nclude a private right of action for defrauded persons." *Id.* at Page 33 (recommendation 8.1).

In response to all the recommendations of the Task Force Report, the legislature considered and did pass four priority bills of Governor O'Malley implementing most of Task Force Report recommendations—including those directly related to this action concerning omissions, misstatements, misrepresentations and false statements in the mortgage process. These passed with nearly complete bi-partisan support a several bills during the 2008 legislative session to change Maryland's foreclosure process and curb certain predatory real estate

24

processes.  As summarized in the General Assembly's 90 Day Report for the 2008

session:

> **Senate Bill 217/House Bill 360** define "mortgage fraud" as any action
> by a person made with the intent to defraud that involves:
>
> • knowingly making, using, or facilitating the use of any deliberate
> misstatement,
>
> misrepresentation, or omission during the mortgage lending process
> with the intent that it will be relied upon by a mortgage lender,
> borrower, or any other party to the lending process;
>
> • receiving any proceeds or any other funds in connection with a
> mortgage closing that the person knows resulted from the
> aforementioned actions;
>
> • conspiring to violate either of the preceding provisions; or
>
> • filing or causing to be filed in the land records in the county where a
> residential real property is located any document relating to a mortgage
> loan that the person knows to contain a deliberate misstatement,
> misrepresentation, or omission.
>
> Under the Acts, the "mortgage lending process" includes the
> solicitation, application, origination, negotiation, servicing,
> underwriting, signing, closing, and funding of a mortgage loan, as well
> as the notarizing of any document in connection with a mortgage loan.

*The 90 Day Report, A Review of the 2008 Legislative Session, Md. Dept. of*

*Legislative Services (April 11, 2008) at Page F18.*

If the common law, including common law fraud, were sufficient to address

the scope of issues intended to be addressed by the MMFPA, then there would have

been no purpose of need for the legislature to enact the MMFPA.  *Robinson v. State*,

353 Md. 683, 694, 728 A.2d 698, 703 (1999)("a cardinal rule of statutory

construction to give effect to the intent of the Legislature" and "where a statute deals with an entire subject-matter…the statute is generally construed as abrogating the common law as to that subject). *Robinson v. State*, 353 Md. 683, 693, 728 A.2d 698, 702 (1999). Here, however as explained by this Court previously, "remedial legislation should receive a broad interpretation to effectuate its purposes." *D.L. ex rel. K.L. v. Baltimore Bd. of Sch. Comm'rs*, 706 F.3d 256, 260 (4th Cir. 2013)(citing *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967)). *See also Pak v. Hoang*, 378 Md. 315, 324-26, 835 A.2d 1185, 1190-91 (2003)(explaining that remedial statutes under Maryland law are recognized by providing remedies and improved remedies not previously available under prior law including common law and that court should not narrowly construe the statute which would only "perpetuate the very evils to be remedied....")(internal quotations and citations omitted).

The District Court did not analyze the MMFPA as a remedial statute and respectfully simply construed it as simply a common law claim, which it is not. JA 340-347. Because it also looked at only portions of the statute as applied to <u>all</u> the well pled facts, its dismissal of Castle's MMFPA claim was in error and improperly construed the 'very evils to remedied' by the statute too narrowly. *Pak v. Hoang*, 835 A.2d at 1190-91.

ii.    *Castle's MMFPA Claim*

Castle stated a sufficiently detailed and plausible MMMPA claim(s) against Capital One:

(i) its forced placed insurance of excessive insurance premiums above its insurable interest (*see supra* section Argument, I at Pages 15 to 20);

(ii) conspiring to enter into certain financial relationships with its forced-place partners and failing "to disclose the financial arrangements [it entered into with Assurant and its affiliates] in order to increase its profits to the detriment of its customers" which infected Castle's mortgage situation and created a fictional default (JA 16, 18-19, 31)(Com. at ¶¶ 33, 34, 41; 95).

(iii) it knowingly refused to cancel the forced-placed insurance even through Castle had obtained new insurance and continued to charge Castle's mortgage account with its higher premium even though she had new coverage (JA 29-30)(Com. at ¶ 83); and

(iv) it back-dated the insurance to cover periods of time when there was no loss (JA 29-30)(Com. at ¶¶ 83, 87).

Each of these distinct claims are actionable under the MMFPA; however, the District Court ruled solely upon the back-dating claim by making certain factual determinations outside the pleadings of the case and simply ignored the other claims.

All persons are expected to know the law. 29 Am. Jur. 2d Evidence § 290. Assuming the truth of the well pled facts of the Complaint and by claiming and charging to Castle that it had the right to force place insurance on the Castle Property in an amount three-times its insurable interest in the property, Capital One knowingly took affirmative actions and utilized a document (i.e. insurance policy) that contained a misstatement[14] in the mortgage lending process ((JA 31)(Com. at ¶ 92); ECF-11-1 (JA 329-332). Md. Code Ann., Real Prop. § 7-401(d)(1-3)(mortgage fraud includes misstatements intended to be relied upon by homeowners and other persons in the mortgage lending process).[15]

In addition, the well pled facts also support Castle's claim that Capital One's conspiring together ((JA 17)(Com. at ¶¶ 34)) to force place insurance upon Castle. Md. Code Ann., Real Prop. § 7-401(d)(5)(mortgage fraud includes conspiring to violate § 7-401(d)(1-4)). In light of these claims Castle has pled viable claims under the MMFPA concerning Castle's claim related to the policy which exceeded Capital One's insurable interest.

---

[14] The MMFPA does not define misstatement. However the Merriam-Webster dictionary defines misstate as "to state incorrectly: give a false account of." See http://www.merriam-webster.com/dictionary/misstatement.

[15] As the Fannie Mae servicer for the Castle loan, Fannie Mae (and the taxpayers now supporting it) rely upon Capital One to not force homeowners into default by charging sums not legally due.

28

Under the MMFPA, Capital One also had duties to disclose to Castle (and other borrowers) and not to conspire to misstate or conceal from Castle the true facts about its forced place insurance program with Assurant and others.  Md. Code Ann., Real Prop. § 7-401(d)(3(5).  Based upon the truth well-pled facts of the of the Complaint and the duties imposed upon Capital One by the MMFPA, Castle has stated claims under the MMFPA which should have been permitted to proceed.  The District Court's decision otherwise should therefore be reversed.

### III.  Castle's Complaint Set Forth Sufficient Facts to Support a Claim Under the Maryland Consumer Protection Act.

The Maryland Consumer Protection Act (CPA) is also remedial legislation. *State v. Cottman Transmissions Systems, Inc.,* 86 Md.App. 714, 743, 587 A.2d 1190, 1204  (Md.App.,1991)("The CPA is to be liberally construed and applied").  In enacting the CPA, the legislature stated:

> The General Assembly concludes, therefore, that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland. It is the purpose of this title to accomplish these ends and thereby maintain the health and welfare of the citizens of the State.

Md. Code Ann., Com. Law § 13-102(b)(3).

At the motion to dismiss stage the analysis of the claims presented is the same under the MCPA and the MMFPA. *Marchese v. JPMorgan Chase Bank, N.A.,* 917 F. Supp. 2d 452, 468-469 ("The grounds for denying the Motion to Dismiss with respect to [mortgage servicing practices] under the MMFPA involve the same analysis the Court conducted under the MCPA"); *Piotrowski v. Wells Fargo Bank, N.A.*, CIV.A. DKC 11-3758, 2013 WL 247549, *13 ("Because Mr. Piotrowski states an MCPA claim based on Wells Fargo's alleged representations and omissions about its consideration of his loan modification requests, the complaint also states an MMFPA claim based on the same conduct").

The MCPA imposes obligations on parties who deal with consumers to speak truthfully by prohibiting any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" and requiring the party to disclose all material facts by making the "[f]ailure to state a material fact if the failure deceives or tends to deceive" an unfair and deceptive practice. MD. ANN. CODE, COMM. LAW §13-301 (1)(3).

The issue of forced place insurance has been the subject of a case under the MCPA. *See Blaylock v. Johns Hopkins Federal Credit Union,* 152 Md.App. 338, 345, 831 A.2d 1120, 1123 (Md.App.,2003). In *Blayock*, there were disclosure issues along with other issues relating to the placement of forced place insurance when the

borrower had insurance in place which all resulted in a settlement agreement in favor of the consumer. *Id.*

Further as noted *supra*, Appellant complained that Capital One was not forthcoming about its relationship with Assurant. Capital One's failure to disclose that it benefitted financially from selling force placed insurance, at a minimum, tended to deceive Appellant who was charged for insurance that was for periods when no loss occurred, when she had her own insurance, and she was charged for insurance purchased well in excess of any insurable interest held by Capital One. *Compare Hoffman v. Stamper*, 385 Md. 1, 32, 867 A.2d 276, 294 (2005)(recognizing that it is possible for certain false and misleading appraisals with no contact with a consumer involved in a transaction subject to the MCPA would so infect the transition as to make a viable claim under the MCPA by the consumer); *MRA Prop. Mgmt., Inc. v. Armstrong*, 426 Md. 83, 109, 43 A.3d 397, 413 (2012)(also recognizing that non-sellers involved in a MCPA governed transaction may be liable, based on the facts, under the MCPA for their involvement in the misleading disclosures).

Capital One's motivation for over purchasing insurance would have been transparent to Appellant and others if Capital One had disclosed its relationship and financial interests with the insurer, including that its sister companies benefitted from its role as a reinsurer. However, whether the failure of Capital One to make these

disclosures violated the MCPA was not ripe to be decided by the District Court at the motion to dismiss stage. Castle contends at a minimum that, accepting as true the well pled facts, she has demonstrated that Capital One's forced place insurance scheme unfairly and deceptive acts infected her mortgage account situation and she should have been permitted to proceed on her claims.

Whether or not the alleged failure to disclose fell within the purview of unfair or deceptive practices prohibited by the MCPA presented factual determinations. The factual determinations should been presented to a jury. It was clearly something that reasonable minds could differ. The District Court's decision decided these factual issues on a motion to dismiss.

It may also be under a common law fraud analysis the District Court thought that reasonable minds could not differ in light of the reliance element under common law fraud. Reliance is not an issue under the MCPA. *See* MD. ANN. CODE, COMM. LAW § 13-302 ("Any practice prohibited by this title is a violation of this title, whether or not any consumer in fact has been misled, deceived…").[16]

---

[16] Castle also pled sufficient facts to demonstrate her reliance at ¶¶ 8, 36, 51, 73, 83, 88, 92, 96, 125, 136 of the Com. The Court of Appeals has also previously rejected the argument that only direct reliance on the unfair or deceptive acts or omissions is actionable under the MCPA and found instead that no reliance may be necessary when the unfair or deceptive act or omission infects the transaction. *Morris v. Osmose Wood Preserving*, 340 Md. 519, 539-40, 667 A.2d 624, 635 (1995).

The Appellant had set forth sufficient allegations to support a MCPA claim. That claim was improperly dismissed by the District Court at the motion to dismiss stage.

IV.    **Because Castle Set Forth Sufficient Facts to Support a Claim Under the MMFPA and MCPA, Here Declaratory and Injunctive Relief Claims Should have Been Permitted to Proceed**

The District Court dismissed Castle's requested relief for injunctive and declaratory relief since it dismissed her other stator claims as well.  JA at 351-353.  Since she has stated claims under both the MMFPA and MCPA, Castle also asks the Court to reverse the District Court's judgment as to her declaratory and injunctive claims since the court below never fully considered that claim.

## CONCLUSION

For the reasons set forth, it is submitted that the decision of the District Court affirming dismissal of Castle's Complaint should be reversed.[17] The District Court's decision was based on an incorrect and incomplete reading of well pled complaint the MMFPA and MCPA and is inconsistent with remedial purposes of the subject statutes and public policies of the State of Maryland.

_____

[17] Castle does not appeal and does not ask this Court to reverse the judgment of the Court below as to her claim under the Maryland Consumer Debt Collection Practices Act.

Respectfully Submitted,

/s/ Scott Borison
Scott Borison
Legg Law Firm LLC
1900 S. Norfolk Rd., Suite 350
San Mateo, CA  94493
Phone (301) 620-1016


/s/ Phillip Robinson
Phillip Robinson
Consumer Law Center LLC
8737 Colesville Road
Silver Spring, MD  20910
Phone (301) 637-6270

*Attorneys for Appellant*


Dated: June 9, 2014

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34, Plaintiff-Appellant, Richard Castle respectfully requests oral argument. This case presents an important issue for consumers: whether a mortgage servicer is granted carte blanche to buy unnecessary insurance and insurance amounts in excess of any insurable interest. Under the District Court's decision, a mortgage servicer's practices that involve the use of false statements, misstatements, and omissions, threaten the promise of homeownership and equities sought by the Maryland legislature to balance the rights and responsibilities of those involved in the mortgage lending process .

The question at issue in this case is an important one that arises at a time when many in this country are facing financially trying times. The protections afforded by the state laws relating to alleged forced placement of insurance in the manner involved in this action does not appear to have been addressed by this Court.  Nor does it appear that this Court or any other appellate court has addressed whether a mortgage lender/servicer in Maryland may force place insurance above its insurable interest in the property.

In light of the important issue raised by the District Court decision, Castle request the opportunity to present oral argument in this matter.

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(E) OR 32(A)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the volume-type limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 8,447  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:  this brief has been prepared in a proportionally spaced typeface using MS Word 2010 in Times New Roman, Font Size 14.

/s/ Phillip Robinson
Phillip Robinson

36

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 9th day of June, 2014, a copy of the foregoing document and the Joint Appendix was served on all parties of record through the CM/ECF system through their counsel of record.

/s/ Phillip Robinson

Phillip Robinson

## REPRODUCTION OF RELEVANT STATUTES & RULES

## **Md. Code Ann., Com. Law § 13-102 (West)**

### § 13-102. Legislative findings; statement of purpose

(a)(1) The General Assembly of Maryland finds that consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit.

(2) The General Assembly recognizes that there are federal and State laws which offer protection in these areas, especially insofar as consumer credit practices are concerned, but it finds that existing laws are inadequate, poorly coordinated and not widely known or adequately enforced.

(3) The General Assembly of Maryland also finds, as a result of public hearings in some of the metropolitan counties during the 1973 interim, that improved enforcement procedures are necessary to help alleviate the growing problem of deceptive consumer practices and urges that favorable consideration be given to requests for increased budget allocation for increases in staff and other measures tending to improve the enforcement capabilities or increase the authority of the Division.

(b)(1) It is the intention of this legislation to set certain minimum statewide standards for the protection of consumers across the State, and the General Assembly strongly urges that local subdivisions which have created consumer protection agencies at the local level encourage the function of these agencies at least to the minimum level set forth in the standards of this title.

(2) The General Assembly is concerned that public confidence in merchants offering goods, services, realty, and credit is being undermined, although the majority of business people operate with integrity and sincere regard for the consumer.

(3) The General Assembly concludes, therefore, that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland. It is the purpose of this title to accomplish these ends and thereby maintain the health and welfare of the citizens of the State.

38

## Md. Code Ann., Com. Law § 13-301 (West)

§ 13-301. Unfair or deceptive trade practices defined

Unfair or deceptive trade practices include any:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that:

(i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;
(ii) A merchant has a sponsorship, approval, status, affiliation, or connection which he does not have;
(iii) Deteriorated, altered, reconditioned, reclaimed, or secondhand consumer goods are original or new; or
(iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

(3) Failure to state a material fact if the failure deceives or tends to deceive;

(4) Disparagement of the goods, realty, services, or business of another by a false or misleading representation of a material fact;

(5) Advertisement or offer of consumer goods, consumer realty, or consumer services:

(i) Without intent to sell, lease, or rent them as advertised or offered; or
(ii) With intent not to supply reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition;

(6) False or misleading representation of fact which concerns:

(i) The reason for or the existence or amount of a price reduction; or
(ii) A price in comparison to a price of a competitor or to one's own price at a past or future time;

(7) Knowingly false statement that a service, replacement, or repair is needed;

(8) False statement which concerns the reason for offering or supplying consumer goods, consumer realty, or consumer services at sale or discount prices;

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

> (i) The promotion or sale of any consumer goods, consumer realty, or consumer service;
> (ii) A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or
> (iii) The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental;

(10) Solicitations of sales or services over the telephone without first clearly, affirmatively, and expressly stating:

> (i) The solicitor's name and the trade name of a person represented by the solicitor;
> (ii) The purpose of the telephone conversation; and
> (iii) The kind of merchandise, real property, intangibles, or service solicited;

(11) Use of any plan or scheme in soliciting sales or services over the telephone that misrepresents the solicitor's true status or mission;

(12) Use of a contract related to a consumer transaction which contains a confessed judgment clause that waives the consumer's right to assert a legal defense to an action;

(13) Use by a seller, who is in the business of selling consumer realty, of a contract related to the sale of single family residential consumer realty, including condominiums and town houses, that contains a clause limiting or precluding the buyer's right to obtain consequential damages as a result of the seller's breach or cancellation of the contract;

(14) Violation of a provision of:  **[FOOTNOTES OMITTED]**

(i) This title;

(ii) An order of the Attorney General or agreement of a party relating to unit pricing under Title 14, Subtitle 1 of this article;

(iii) Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act;[1]

(iv) Title 14, Subtitle 3 of this article, the Maryland Door-to-Door Sales Act;[2]

(v) Title 14, Subtitle 9 of this article, Kosher Products;

(vi) Title 14, Subtitle 10 of this article, Automotive Repair Facilities;

(vii) Section 14-1302 of this article;

(viii) Title 14, Subtitle 11 of this article, Maryland Layaway Sales Act;[3]

(ix) Section 22-415 of the Transportation Article;

(x) Title 14, Subtitle 20 of this article;

(xi) Title 14, Subtitle 15 of this article, the Automotive Warranty Enforcement Act;[4]

(xii) Title 14, Subtitle 21 of this article;

(xiii) Section 18-107 of the Transportation Article;

(xiv) Title 14, Subtitle 22 of this article, the Maryland Telephone Solicitations Act;[5]

(xv) Title 14, Subtitle 23 of this article, the Automotive Crash Parts Act;[6]

(xvi) Title 10, Subtitle 6 of the Real Property Article;

(xvii) Title 14, Subtitle 25 of this article, the Hearing Aid Sales Act;[7]

(xviii) Title 14, Subtitle 26 of this article, the Maryland Door-to-Door Solicitations Act;[8]

(xix) Title 14, Subtitle 31 of this article, the Maryland Household Goods Movers Act;[9]

(xx) Title 14, Subtitle 32 of this article, the Maryland Telephone Consumer Protection Act;[10]

(xxi) Title 14, Subtitle 34 of this article, the Social Security Number Privacy Act;[11]

(xxii) Title 14, Subtitle 37 of this article, the Online Child Safety Act;

(xxiii) Section 14-1319, § 14-1320, or § 14-1322 of this article;

(xxiv) Section 7-304 of the Criminal Law Article;

(xxv) Title 7, Subtitle 3 of the Real Property Article, the Protection of Homeowners in Foreclosure Act;

(xxvi) Title 6, Subtitle 13 of the Environment Article;

(xxvii) Section 7-405(e)(2)(ii) of the Health Occupations Article;

(xxviii) Title 12, Subtitle 10 of the Financial Institutions Article; or

(xxix) Title 19, Subtitle 7 of the Business Regulation Article; or

(15) Act or omission that relates to a residential building and that is chargeable as a misdemeanor under or otherwise violates a provision of the Energy Conservation Building Standards Act,[12] Title 7, Subtitle 4 of the Public Utilities Article.

## Md. Code Ann., Com. Law § 13-302 (West)

### § 13-302. Deception or damage unnecessary

Any practice prohibited by this title is a violation of this title, whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice.

## Md. Code Ann., Ins. § 12-301 (West)

### § 12-301. Insurable interest in property required for property insurance

**Insurable interest defined**
(a) In this section, "insurable interest" means an actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance against loss, destruction, or pecuniary damage or impairment to the property.

**In general**
(b) A contract of property insurance or a contract of insurance of an interest in or arising from property is enforceable only for the benefit of a person with an insurable interest in the property at the time of the loss.

**Measurement of insurable interest**
(c) An insurable interest in property is measured by the extent of possible harm to the insured from loss, injury, or impairment of the property.

**Automobile insurance policies procured by independent insurance producers**
(d)(1) This subsection applies only to an automobile insurance policy that is procured by an independent insurance producer.

(2) Upon renewal of an existing automobile insurance policy, if the insured or a person holding an insurable interest in the subject of the policy requests proof of insurance, an authorized insurer shall provide:
 (i) a copy of the automobile insurance policy declarations; or
 (ii) written proof of the automobile insurance that consists of:

1. the name and address of the insured and insurer;
2. a description of the vehicle, including the vehicle identification number, that is the subject of the insurance policy;
3. a description and the amount, if applicable, of the insurance coverage including applicable deductibles;
4. the inception and expiration dates of coverage;
5. the name and address of the person with an insurable interest; and
6. the premium for the applicable coverage.

**Authorization from insured before providing proof of insurance**
(e) An insurer may require written authorization from the insured before providing proof of insurance under this section to a person other than a financial institution.

## Md. Code Ann., Real Prop. § 7-401 (West)

§ 7-401. Definitions

**In general**
(a) In this subtitle the following words have the meanings indicated.

**Commissioner**
(a-1) "Commissioner" means the Commissioner of Financial Regulation in the Department of Labor, Licensing, and Regulation.

**Document**
(b) "Document" includes applications, appraisal reports, HUD-1 settlement statements, W-2 forms, verifications of income or employment, bank statements, tax returns, payroll stubs, and any required disclosure.

**Homeowner**
(c) "Homeowner" means:
(1) A record owner of residential real property; or
(2) An individual occupying the residential real property under a use and possession order issued under Title 8, Subtitle 2 of the Family Law Article.

**Mortgage fraud**
(d) "Mortgage fraud" means any action by a person made with the intent to defraud that involves:

43

(1) Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(2) Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(3) Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(4) Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1), (2), or (3) of this subsection;

(5) Conspiring to violate any of the provisions of item (1), (2), (3), or (4) of this subsection; or

(6) Filing or causing to be filed in the land records in the county where a residential real property is located, any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

**Mortgage lending process**
(e)(1) "Mortgage lending process" means the process by which a person seeks or obtains a mortgage loan.

(2) "Mortgage lending process" includes:
    (i) The solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan; and
    (ii) The notarizing of any document in connection with a mortgage loan.

**Mortgage loan**

(f) "Mortgage loan" has the meaning stated in § 11-501 of the Financial Institutions Article.

**Pattern of mortgage fraud**

(g) "Pattern of mortgage fraud" means two or more incidents of mortgage fraud that:

(1) Involve two or more residential real properties; and

(2) Have similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics.

**Residential real property**

(h) "Residential real property" means real property improved by four or fewer single family dwelling units.

## Md. Code Ann., Real Prop. § 7-406 (West)

§ 7-406. Damages and attorney's fees

**Damages**

(a)(1) In addition to any action authorized under this subtitle and any other action otherwise authorized by law, a person may bring an action for damages incurred as the result of a violation of this subtitle.

(2) A person may bring an action for damages under this section:

(i) Without having to exhaust administrative remedies under this subtitle; and

(ii) Regardless of the status of an administrative action or a criminal prosecution, if any, under this subtitle.

**Attorney's fees**

(b) A person who brings an action under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

**Treble damages**

(c) If the court finds that the defendant violated this subtitle, the court may award damages equal to three times the amount of actual damages.